## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY FLEMING,

        *Plaintiff,*

v.

ROCKET MORTGAGE, LLC,

        *Defendant.*

Case No. 2:23-cv-11109

Hon. Jonathan J.C. Grey

### ROCKET MORTGAGE, LLC'S
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant Rocket Mortgage, LLC ("Rocket Mortgage"), by and through its undersigned attorneys, move this Court to grant summary judgment in favor of Rocket Mortgage and dismiss Plaintiff Anthony Fleming's single-count claim of retaliation under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5567(a)(1). As set forth in the accompanying Brief in Support of this Motion, judgment for Rocket Mortgage is required for three reasons:

First, Plaintiff never alleged that Rocket Mortgage was violating any law prior to his termination.

Second, even if Plaintiff had asserted that Rocket Mortgage violated the CFPA, such allegation was neither subjectively nor objectively reasonable.

Third, there is uncontroverted, clear and convincing evidence that Rocket Mortgage terminated Plaintiff for reasons that are wholly unrelated to any alleged protected activity.

Pursuant to Local Rule 7.1(a), on October 9, 2024, counsel for Rocket Mortgage held a conference with counsel for Plaintiff in which counsel for Rocket Mortgage explained the nature of the motion and its legal basis and requested, but did not obtain concurrence in the relief sought.

**WHEREFORE**, Rocket Mortgage respectfully requests that this Court grant its Motion for Summary Judgment, dismissing Plaintiff's Complaint in total.

Dated November 4, 2024                          Respectfully submitted,

                                                */s/ Christina Lewis*

James F. Hermon (P53765)          W. Kyle Tayman
Dykema Gossett PLLC               Goodwin Procter LLP
400 Renaissance Center           1900 N Street, N.W.
Detroit, Michigan 48243          Washington, DC 20036
Telephone: (313) 568-6800        Telephone: (202) 346-4000
JHermon@dykema.com               ktayman@goodwinlaw.com
                                 Christina Lewis
                                 Goodwin Procter LLP
                                 100 Northern Avenue
                                 Boston, MA 02210
                                 Telephone: (617) 570-1000
                                 ChristinaLewis@goodwinlaw.com

*Counsel for Defendant Rocket Mortgage, LLC*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANTHONY FLEMING,

        *Plaintiff,*

v.

ROCKET MORTGAGE, LLC,

        *Defendant.*

Case No. 2:23-cv-11109

Hon. Jonathan J.C. Grey

## BRIEF IN SUPPORT OF
## ROCKET MORTGAGE, LLC'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................2

I.     Plaintiff's Employment....................................................................2

II.    The Role of a Solutions Analyst at Rocket Mortgage.....................................3

III.   Plaintiff's Performance History...........................................................4

IV.   Plaintiff's Alleged Complaint...............................................................7

V.    Plaintiff's Separation from Rocket Mortgage ...........................................8

LEGAL STANDARD ...................................................................................10

ARGUMENT .............................................................................................10

I.     Plaintiff Cannot Establish a Prima Facie Case Under the CFPA .................10

     A.    Plaintiff did not engage in protected activity under the CFPA. ..........11

           i.     Asking Questions Is Not Protected Activity............................13

           ii.    Plaintiff Did Not Have a Subjective Belief. ............................14

           iii.   Plaintiff Cannot Establish an Objectively Reasonable Belief. .16

     B.    Rocket Mortgage did not interpret Plaintiff's questions as protected activity. ..................................................................................19

     C.    Plaintiff has no evidence that the alleged protected activity was a contributing factor in his termination.................................................20

II.    Rocket Mortgage Has Clear and Convincing Evidence that It Would Have Taken the Same Action Absent Any Alleged Protected Activity. ................23

CONCLUSION ..........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. CareSource*,
  576 F.3d 551 (6th Cir. 2009) ...............................................................10

*Beacom v. Oracle Am., Inc.*,
  2015 WL 2339558 (D. Minn. Mar. 11, 2015) ....................................20

*Blakenship v. Superior Controls, Inc.*,
  2014 WL 12659920 (E.D. Mich. Sept. 26, 2014) ...............................1

*Day v. Staples, Inc.*,
  555 F.3d 42 (1st Cir. 2009)........................................................14, 17

*Hinton v. McQuillan*,
  2008 WL 907464 (W.D. Mich. March 31, 2008).............................10

*Pannell v. Future Now*,
  895 F. Supp. 196 (W.D. Tenn. 1995) ..................................................20

*Provience v. City of Detroit*,
  2011 WL 7445088 (E.D. Mich. Nov. 28, 2011)...................................2

*Real-Loomis v. Bryn Mawr Tr. Co.*,
  2022 WL 17477552 (E.D. Pa. Dec. 6, 2022).........................11, 19, 24

*Reist v. Orr*,
  67 F.3d 300 (6th Cir. 1995) ...............................................................10

*Rhinehimer v. U.S. Bancorp Invest., Inc.*,
  787 F.3d 797 (6th Cir. 2015) .......................................................11, 16

*Sherman v. CBRE Grp., Inc.*,
  2016 WL 454733 (M.D. Tenn. Feb. 5, 2016).........................18, 19, 20

*Sussberg v. K-Mart Holding Corp.*,
  463 F. Supp. 2d 704 (E.D. Mich. 2006) ...............................10, 20, 22

*Veard v. F&M Bank*,
  2016 WL 645309 (M.D. Tenn. Feb. 18, 2016)...........................*passim*

*Veard v. F&M Bank*,
   704 Fed.Appx. 469 (6th Cir. 2017).................................................................*passim*

*Wallender v. Canadian National Railway Co.*,
   2015 WL 10818741 (W.D. Tenn. Feb. 10, 2015) ...............................................24

*Walton v. Nova Information Systems*,
   2008 WL 1751525 (E.D. Tenn. April 11, 2008) .................................................23

*Wiest v. Lynch*,
   710 F.3d 121 (3d Cir. 2013) ...............................................................................19

*Wood v. Dow Chem. Co*,
   72 F.Supp.3d 777 (E.D. Mich 2014) ......................................................12, 13, 16

**Statutes**

Consumer Financial Protection Act, 12 U.S.C. § 5567(a)(1).........................*passim*

Truth in Lending Act, 15 U.S.C. 1601....................................................................17

**Rules & Regulations**

12 C.F.R. 1026 .......................................................................................................17

Fed. R. Civ. P. 56(a)...............................................................................................10

## <u>ISSUES PRESENTED</u>

1)      Whether Defendant Rocket Mortgage, LLC ("Rocket Mortgage") is entitled to summary judgment pursuant to Fed. R. Civ. P. 56(c) with respect to Plaintiff Anthony Fleming's claim under the anti-retaliation provision of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5567(a)(1) when (a) he cannot demonstrate that he engaged in a protected activity under the Act; (b) he cannot establish that Rocket Mortgage knew that he engaged in any protected activity; (c) he cannot establish a causal connection between any purported protected activity and his discharge; and (d) there are legitimate, non-retaliatory reasons for his discharge, which are supported by clear and convincing evidence?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

1.   *Veard v. F&M Bank,* 704 Fed.Appx. 469 (6th Cir. 2017)

2.   *Rhinehimer v. U.S. Bancorp Invest., Inc*., 787 F.3d 797, 805 (6th Cir. 2015)

3.   *Sherman v. CBRE Grp., Inc*., 2016 WL 454733 (M.D. Tenn. Feb. 5, 2016).

4.   *Veard v. F&M Bank,* 2016 WL 645309 (M.D. Tenn. Feb. 18, 2016)

5.   *Wallender v. Canadian National Railway Co.,* 2015 WL 10818741 (W.D. Tenn. Feb. 10, 2015)

6.   *Wood v. Dow Chem. Co*, 72 F.Supp.3d 777 (E.D. Mich 2014)

**Statutes**

**1.**   12 U.S.C. § 5567(a)(1).

## INTRODUCTION

The undisputed facts in this case show that Plaintiff instigated an altercation with a colleague, displayed aggressive behavior, and made the colleague feel unsafe. The facts further show that this incident occurred on top of numerous prior disciplinary actions and performance issues regarding Plaintiff's communication style and behavior. Cumulatively, Plaintiff's repeated misconduct and his aggressive altercation with a colleague left Rocket Mortgage no choice but to terminate his employment. Nonetheless, Plaintiff baldly contends that his termination was in retaliation for engaging in protected activity under the Consumer Financial Protection Act ("CFPA"). Putting aside that Plaintiff's support for his retaliation claim rests entirely on his *ipse dixit,* his claim cannot survive because: (i) Plaintiff never alleged that Rocket Mortgage was violating the law prior to his termination; (ii) even if Plaintiff had asserted that Rocket Mortgage violated the CFPA, such allegation was neither subjectively nor objectively reasonable; and (iii) there is uncontroverted, clear and convincing evidence that Rocket Mortgage terminated Plaintiff for reasons that are wholly unrelated to any alleged protected activity.[1]

_____

[1] One business day before the instant motion was due to the Court, Rocket Mortgage learned that Plaintiff engaged in deliberate spoliation of relevant text messages. Rocket Mortgage intends to further brief the Court on this issue in its forthcoming Motion for Sanctions in which it will seek an adverse inference instruction, as well as other appropriate remedies. *See Blakenship v. Superior Controls, Inc.*, 2014 WL 12659920 (E.D. Mich. Sept. 26, 2014) (granting motion for sanctions and "conclud[ing] that a mandatory inference instruction is appropriate" where plaintiff

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.    Plaintiff's Employment

1.    Plaintiff Anthony Fleming ("Plaintiff") began his employment with Rocket Mortgage (f/k/a Quicken Loans Inc.) in July 2019 as a Payoff Specialist. Ex. 1 at 48:11-17; Ex. 2 at FLEM0216.

2.    In November 2020, Plaintiff transferred roles and began working as an unlicensed Solutions Analyst ("SA") in the Mortgage Operations Department. Ex. 3 at FLEM0275;

3.    Plaintiff's employment with Rocket Mortgage was at-will. Ex. 2 at FLEM0216; Ex. 4 at 34:20-25.

4.    Plaintiff reported to several Team Leaders[2] at various points throughout his tenure as a SA, including Eric Whalen, James Spencer, and Keith Seay. Ex. 3 at FLEM0275; Ex. 5 at FLEM0223. His Senior Leaders included Lakeia Gordon (Director, Client Experience Operations) and Beth Fishman (Divisional Vice President). Ex 3. at FLEM0274.

5.    At the time of his termination from Rocket Mortgage, Plaintiff reported to Keith Seay. *Id.* at FLEM0275.

---

intentionally destroyed evidence); *see also Provience v. City of Detroit*, 2011 WL 7445088, at *11 (E.D. Mich. Nov. 28, 2011) (finding an adverse inference jury instruction appropriate where a party failed to produce relevant information).

[2] Rocket Mortgage refers to its supervisors as "Team Leaders" and its employees as "Team Members."

## II.     The Role of a Solutions Analyst at Rocket Mortgage

6.     As a SA, Plaintiff was primarily responsible for reviewing and investigating mortgage loan applications that were in suspense, meaning that the application could not move forward in the underwriting and approval process without additional information, documentation or change to the loan. Ex. 1 at 63:6-65:10; Ex. 6 at 19:6-9; Ex. 7 at 13:3-11.

7.     SAs worked with the clients and/or the mortgage bankers to resolve issues so that the loan can move out of suspense and close. Ex. 6 at 19:6-9 (Q: "Is a solutions analyst, . . . is it your goal to get loans out of suspense?" A: "Yes."); Ex. 7 at 13:3-11 ("I would try to get loans to move back into process to close.").

8.     SAs worked to resolve these issues either by collecting the required or missing documentation from the client or modifying certain aspects of the loan to account for changed circumstances. Ex. 8 at 13:21–14:17.

9.     At Rocket Mortgage, SAs can be either licensed or unlicensed. Ex. 6 at 15:24-16:2 (unlicensed SA); Ex. 7 at 18:4-21 (licensed SA); Ex. 16. 41:23-42:8.

10.     Unlicensed SAs can make changes to loan structures, but only licensed SAs can communicate changes that impact the interest rate or total costs to the client. Ex. 6 at 15:10–16:2 ("The changes could be done by the unlicensed individuals . . . a conversation with the client about these changes, that is the – the piece that's licensed versus unlicensed.") Ex. 7 at 17:8-13, 18:9-12 (Q: "What types of things

could you, as a licensed solutions analyst, do that an unlicensed solutions analyst, such as Mr. Fleming, could not? A: "I communicated with clients, their changes." Q: "So licensed and unlicensed solutions analysts, the difference is if you're licensed can you[sic] communicate with clients regarding changes to rates and costs, is that correct?" A: "Yes."); Ex. 9 at FLEM0003.

## III.   Plaintiff's Performance History

11.   Throughout his tenure at Rocket Mortgage, Plaintiff received several formal coachings, one-on-one meetings, and warnings about his behavior and communication style. Ex. 10. For example, his performance record provides, in part, that Plaintiff engaged in the following behavior:

| Date | Performance History |
|------|---------------------|
| September 12, 2019 | "[P]articipating in conversations and making **negative comments about other team member's production**… As this is not the first conversation that we have had about behavior, continued issues of this nature will result in disciplinary action." Ex. 10 at FLEM0151 (Brittany Harwood) (emphasis added). |
| August 4, 2020 | "Today we discussed feedback that we received from another team member regarding comments/messages that she did not agree with, and ultimately **caused negative noise for her and distracted her from her work**." <br><br> "**Spreading… unsubstantiated theor[ies]**" regarding leadership. <br><br> "You might not have meant anything you said to come across a certain way this time or even in the past, but **the perception was that you were being negative**… Ultimately this is something that is going to hold you back in your career if you cannot get it straightened out. Right now we aren't able to endorse you for |

4

| | |
|---|---|
| | leadership based on this and we won't be able to endorse you for a transfer to another role."<br><br>Ex. 10 at FLEM0143 (John Long) (emphasis added). |
| October 7, 2021 | A phone call with a client led to a complaint due to Plaintiff's "tone" and lack of "empathy" shown towards the client's situation. Ex. 10 at FLEM0138 (Keith Seay). |
| November 22, 2021 | "You need to be **mindful of your tone when speaking to, emailing, or messaging any team members or clients**. You have come across in a negative way in the office by complaining about how some loans have been handled. We do not want to create a negative culture and negativity spreads like wildfire… Also we discussed keeping an eye on your tone when communicating via email/text." *Id.* (Keith Seay) (emphasis added). |
| Overall 2021 Performance Review | "[Plaintiff's] responses can come off as **combative**" Ex. 11 at FLEM0118 (Keith Seay) (emphasis added). |
| January 27, 2022 | "Thank you for taking the time to talk to me on Monday 1/24 **regarding your communication and tone**. You had a couple instances where you sent an email to other [team members] that were not of a professional nature which led to some feedback. This is something that we have discussed recently and I have coached you on. More specifically this was discussed on 11/22 with me regarding conversations with other TMs in the office, on 10/7/21 about a phone call with a client that led to a complaint, as well as several others dating back to 2019 on other teams… Further issues could lead to disciplinary action up to and including separation." Ex. 10 at FLEM0137 (Keith Seay) (emphasis added). |
| April 14, 2022 | "Today we spoke about communication in the workplace, specifically leaving unprofessional notes in amp. Under any occasion you are not to **blame another team for not assisting you with a loan**, when they[sic] done the exact opposite and did their best to help you fix the loan issues. I stated this type of communication will not continue and you understood, agreed, and committed that this will not happen again. If this does happen |

| | |
|---|---|
| | again, It may lead to further disciplinary action, up to and including separation." *Id*. (James Spencer) (emphasis added). |
| May 3, 2022 | "[W]e had a seek to understand about why you have been leaving **argumentative notes in AMP**… You seem more concern[ed] about the process with why loan was suspended instead of addressing the suspense reason and following UW instructions to help remove the loan from suspense… Since we have previously had conversations about leaving improper comments and notes, and not arguing in amp as a team in April… **any future instances of similar improper communication will result in further disciplinary action, including and up to separation**." Ex. 10 at FLEM0136 (James Spencer) (emphasis added). |
| May 8, 2022 | "You left several notes in AMP arguing about the process for the loan, going back and forth with UW for 2 pages of comments… This is **unacceptable behavior and cannot continue to happen**. You were just coached on this issue on 5/3 with your leader James. We discussed what needs to happen in the future and that disciplinary action will likely occur upon James' return to the office on Monday." *Id.* (Keith Seay) (emphasis added). |
| May 10, 2022 | "During our meeting you were put on a verbal warning for your Communication. Specifically, there have been multiple instances where your communication has been either rude, or your feedback has been combative and unwarranted… You are aware that if this does not improve that it will lead to further **<u>disciplinary action including and up to separation</u>**." *Id.* (James Spencer) (emphasis in original). |

12.     Between October 2021 and May 2022, Plaintiff was informed on at least four separate occasions that, if his unprofessional behavior and communication did not change, it may lead to "further disciplinary action, up to and including separation." Ex. 10 at FLEM0137 (January 27, 2022 and April 14, 2022), at FLEM0136 (May 3, 2022 and May 10, 2022).

## IV.    Plaintiff's Alleged Complaint

13.    On April 18, 2022, Plaintiff sent an email to the unmonitored email address "ComplianceTraining@quickenloans.com" in which he inquired "whether or not unlicensed Team members can make changes to loans." Ex. 9 at FLEM0003. In this same email, Plaintiff noted that his team leader, James Spencer, had told him that unlicensed team members could change pricing on loans, and pasted a screenshot of a Teams message from Mr. Spencer in which Mr. Spencer stated "unlicensed [team members] can make changes, but Licensed [team members] must communicate the changes [to the] client." *Id.* There is no record that anyone at Rocket Mortgage saw or responded to this email. Ex. 12 ¶ 3.

14.    On June 9, 2022, Plaintiff sent an email to his team leader, Keith Seay, and certain other team members stating that "[he] thought if it was baselining we couldn't pass costs onto client." Ex. 13 at FLEM0298. Mr. Seay responded that same day informing him that the practice identified by Plaintiff was acceptable. *Id.*

15.    Plaintiff testified that he periodically raised questions about unlicensed team members making modifications to loan structures and Rocket Mortgage's practice of passing costs onto clients as early as "September of 2021" or "between Thanksgiving and Christmas of 2021." Ex. 1 at 72:10-13, 78:18-24, 227:14-19; Ex. 4 at 80:4-8 (Q: "Were you accusing Rocket Mortgage of violating the law or were you asking questions about whether you could or could not lawfully engage in

certain conduct? A: I was asking questions.").

**V.      Plaintiff's Separation from Rocket Mortgage**

16.     On June 23, 2022, Plaintiff engaged in an argumentative back and forth
with Jorge Menocal, an underwriting team leader, regarding a loan that was halted
in the underwriting process. Ex. 14; Ex. 1 at 209:22 –211:10.

17.     When Plaintiff did not receive the desired response from Mr. Menocal,
Plaintiff went over to Mr. Menocal's desk uninvited to speak with him, "hovered
directly over [Mr. Menocal]," "tried to pressure [Mr. Menocal]" into improperly
proceeding with a loan, and, at one point, tried to take control by aggressively
grabbing Mr. Menocal's computer mouse. Ex. 14 at FLEM0286.

18.     Mr. Menocal described the altercation as "aggressive" and
"unprofessional" when he reported this incident to Mr. Fleming's leaders, Keith
Seay and Lakeia Gordon, and stated that he believed this behavior "warrant[ed]
further disciplinary action." *Id.* at FLEM0287.

19.     During the COVID-19 pandemic, Rocket Mortgage adopted various
protocols aimed at employee safety, including but not limited to social distancing.
Despite this, and as explained above, Mr. Fleming started an altercation with a
colleague and invaded his personal space, and did so in a way that the colleague felt
was threatening. Ex. 15 ¶ 3; Ex. 16 at 36:5-10.

20.     In response to receiving this email from Mr. Menocal, Mr. Seay,

Plaintiff's current team leader, sent Ms. Gordon a list of Plaintiff's prior disciplinary actions. Ex. 17. Ms. Gordon forwarded this list to her leader, Beth Fishman, stating that she "strongly fel[t] we need to move forward with separation." *Id.*

21.    Based on the incident with Mr. Menocal and Plaintiff's history of engaging in combative and unprofessional behavior, both Ms. Gordon and Mr. Seay recommended his termination. Ex. 17 at FLEM0283; Ex. 18 ¶ 6; Ex. 16 at 32:11-23.

22.    Ms. Gordon recommended Plaintiff's termination because he "displayed some aggressive tendencies with another team member that left that team member feeling uncomfortable, and in turn made me feel uncomfortable for that individual, and [Plaintiff] has had numerous conversations about his behavior." Ex. 16 at 36:5-10.

23.    An official request for permission to separate Mr. Fleming's employment was sent to Team Relations[3] on July 8, 2022, which stated, "Leadership is requesting separation for Anthony Fleming, Senior Solutions Analyst, due to behavioral and communication concerns." Ex. 3 at FLEM0274. The termination was approved by Tony Dunn, the Executive Vice President of Client Experience of Operations, and effectuated on July 22, 2022. *Id.*

---

[3] Rocket Mortgage refers to its Human Resources personnel as Team Relations.

## LEGAL STANDARD

Summary judgment may be granted in whole or in part where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate in cases where it is "[the nonmoving party's] word against a barrage of unrefuted evidence in support of [the moving party's] motion." *Reist v. Orr*, 67 F.3d 300, at *2 (6th Cir. 1995); *Hinton v. McQuillan*, 2008 WL 907464 (W.D. Mich. March 31, 2008). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). There is no genuine issue of material fact when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Sussberg v. K-Mart Holding Corp.*, 463 F. Supp. 2d 704, 710 (E.D. Mich. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). No such genuine issues exist in the present case.

## ARGUMENT

### I.  Plaintiff Cannot Establish a *Prima Facie* Case Under the CFPA

The CFPA, in pertinent part, affords protection to a "covered employee" who "provided, caused to be provided, or is about to provide or cause to be provided, information to the employer… relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the [CFPB]." 12

10

U.S.C. § 5567(a)(1). The Sixth Circuit has held that in order to establish a *prima facie* case of retaliation under the CFPA, Plaintiff has the burden of showing, by a preponderance of the evidence, that:

> "(1) he engaged in protected activity; (2) the employer knew or suspected, either actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action."

*Veard v. F&M Bank*, 704 Fed.Appx. 469, 473 (6th Cir. 2017) (quoting *Rhinehimer v. U.S. Bancorp Invest., Inc.*, 787 F.3d 797, 805 (6th Cir. 2015)).[4]

Plaintiff must establish each of these elements to avoid summary judgment. As explained below, Plaintiff's cannot establish <u>any</u> of them.

### A.   Plaintiff did not engage in protected activity under the CFPA.

In his Complaint, Plaintiff alleges that (1) "Rocket Mortgage was unlawfully manufacturing changes in circumstances to modify pricing on loans and then passing these modifications as costs onto [mortgagors][5] without a lawful basis and without proper notice," Compl. ¶ 17, and that (2) Rocket Mortgage was unlawfully

---

[4] Courts interpreting the anti-retaliation provision of the CFPA have turned to cases analyzing the Sarbanes-Oxley Act's anti-retaliation provision as it requires the same *prima facie* elements as the CFPA and there is a lack of cases on the anti-retaliation provision of the CFPA. *Veard v. F & M Bank*, 2016 WL 645309 at 8 n.12 (M.D. Tenn. Feb. 18, 2016); *Real-Loomis v. Bryn Mawr Trust Co.*, 2022 WL 1747752, at *2 (E.D. Penn. Dec. 6, 2022).

[5] Plaintiff uses the word "mortgagee" in his Complaint, but has testified that he believes Rocket Mortgage was unlawfully passing costs onto its *clients*, which would be the potential mortgagors. Ex. 1 at 219:16-20.

11

permitting unlicensed team members to make changes to loan structures. *Id.* ¶ 22; Statement of Material Facts ("SMF") ¶¶ 13-15. In his deposition, however, Plaintiff testified that he never actually asserted any violation of law, but instead, asked questions regarding loan modifications and when it was proper to pass costs onto clients. Specifically, Plaintiff testified that he raised questions relating to: (i) unspecified Rocket Mortgage team members failing to properly work through loans that were in suspense, which "could" result in the expiration of the interest rate lock, and "could" lead to the client paying a higher interest rate (Ex. 1 at 72:10–75:11, 112:2-20); and (ii) unlicensed SAs making modifications to loans that resulted in increased interest rates or additional costs to the client, which Plaintiff felt should only be made by licensed SAs. *Id.* at 73:2-9, 75:19–76:21.

In order to establish that he engaged in protected activity, Plaintiff must first show that he raised a complaint about specific behavior, as opposed to merely asking questions. *Wood v. Dow Chem. Co.*, 72 F. Supp. 3d 777, 788 (E.D. Mich. 2014). If Plaintiff can clear this hurdle, Plaintiff must next show that he had both (i) a subjective belief, and (ii) an objectively reasonable belief that the challenged practices he complained of constituted a violation of relevant law. *Veard*, 704 F. App'x at 474. "That is, [Plaintiff] must show that he actually believed [Rocket Mortgage's] conduct violated the CFPA and that a reasonable person in his position would have believed [Rocket Mortgage] violated the act." *Id.*

### i. *Asking Questions Is Not Protected Activity*

By his own admission, Plaintiff asked questions regarding certain practices, but never actually raised a complaint that Rocket Mortgage was engaging in unlawful conduct. Mere questions are not sufficient to constitute protected activity. *See Wood*, 72 F.Supp.3d at 785 ("General inquiries by an employee, however, do not constitute protected activity.") (internal quotations omitted).

In *Veard v. F&M Bank*, the district court found that plaintiff did not engage in a protected activity where plaintiff's alleged complaint "was merely a question, not a complaint about specific behavior." 2016 WL 645309, at *7. Here, Plaintiff concedes that he was not reporting any violation when raising these concerns and was merely asking questions about how to properly do his job. In fact, Plaintiff testified repeatedly that when he raised these concerns that he was not making an accusation that there was a violation of law, but simply "asking questions." Ex. 4 at 80:4-8 (Q: "Were you accusing Rocket Mortgage of violating the law or were you asking questions about whether you could or could not lawfully engage in certain conduct? A: I was asking questions."); *see also* Ex. 1 at 76:19-21, 80:22–81:1; 85:22-24, 128:19-22 (Q: "when you would raise these issues, they were always in the form of a question, correct? A: Correct. Q: You never accused anybody of doing anything unlawful? A: No."). Plaintiff asked questions about these challenged

practices and his team leaders provided him with instructions on how to properly follow procedure. This is not protected activity under the CFPA.

### ii. *Plaintiff Did Not Have a Subjective Belief.*

Even if Plaintiff had raised a complaint, as opposed to merely asking questions, Plaintiff did not raise his purported "complaints" in good faith. *See Day v. Staples, Inc.*, 555 F.3d 42, 54 (1st Cir. 2009) ("As to the subjective component, the law is not meant to protect those whose complaints are not undertaken in subjective good faith."). Plaintiff asserts that he began "raising concerns with his supervisors that certain Rocket Mortgage practices may be in violation of Federal Law . . . beginning in April of 2022."[6] Compl. ¶ 16. As stated above, on April 18, 2022, Plaintiff sent an email to the unmonitored email address "ComplianceTraining@quickenloans.com" in which he inquired "whether or not unlicensed Team members can make changes to loans." SMF ¶ 13.

---

[6] In his deposition, Plaintiff asserts for the first time that he *actually* began raising these concerns in "September of 2021" or "between Thanksgiving and Christmas of 2021." Ex. 1 at 72:10-15, 227:14-19). Plaintiff's deposition testimony is not consistent with the allegations in his Complaint, and Plaintiff has provided no evidence of this earlier date other than his say-so, and none of his leaders recall him ever raising these concerns to them at this time (or any time thereafter). Ex. 6 at 14:8-18; Ex. 16 at 40:21–44:5; Ex. 8 at 23:18-24:1; Ex. 18 ¶¶ 4-5. Regardless, even if Plaintiff first raised these questions in latter half of 2021, these questions would have come on the heels of multiple disciplinary actions (in 2020, in October 2021 and in November 2021). SMF ¶ 12. Accordingly, whether Plaintiff first raised questions in late 2021 or April 2022, the motivation is the same—he raised these questions only after receiving disciplinary action, knowing his job was in jeopardy.

Plaintiff sent this inquiry just four days (and only two business days) after he had a "Coaching Conversation" with Mr. Spencer in which Mr. Spencer informed Plaintiff that his poor "communication in the workplace, specifically leaving unprofessional notes in [the Company's internal system]" could not continue or "it may lead to further disciplinary action, up to and including separation." SMF ¶ 11. In the write-up of this conversation, Mr. Spencer noted that Plaintiff "understood, agreed, and committed that this [conduct would] not happen again." *Id.* Once Plaintiff was notified that he could face termination for his unprofessional conduct, Plaintiff immediately took steps to create a paper trail that would make any further disciplinary action by Rocket Mortgage seem improper.[7] The timing of this inquiry proves that Plaintiff did not "actually believe" that these practices constituted a violation of law and was instead raised in a frantic attempt to save his job. *See Veard*, 704 F. App'x at 474.

---

[7] As further evidence of this orchestrated paper trail, shortly after the June 2022 incident that led to Plaintiff's separation, Plaintiff reached out to Kimberly Dann, a Team Relations Specialist, to allege that he was being "punished" for his "beliefs." Ex. 4 at 9:23–10:6; Ex. 21 at 2. In his deposition, Plaintiff testified that, by "beliefs," he meant that he was questioning whether Rocket Mortgage was "doing the right thing," and that he had requested a religious exemption from Rocket Mortgage's mandatory COVID vaccination policy (which, clearly, has nothing to do with this litigation). Ex. 4 at 65:23–66:10. In any event, at the time Plaintiff raised these issues, he had already engaged in the conduct that led to his termination and he was well aware that he was likely to be terminated.

### *iii.    Plaintiff Cannot Establish an Objectively Reasonable Belief.*

Even if Plaintiff could establish that he had a good faith subjective belief that Rocket Mortgage violated the CFPA, he cannot establish that it was "objectively reasonable." *Wood*, 72 F. Supp. 3d at 788. Objective reasonableness is "evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Veard,* 2016 WL 645309, at *8 (citing *Rhinehimer*, 787 F.3d at 811). Plaintiff cannot present any evidence that a reasonable, unlicensed SA who had gone through the same training and instruction as Plaintiff would have reasonably thought Rocket Mortgage's policies were in violation of federal law.

Indeed, Plaintiff elected to depose two other Rocket Mortgage SAs, both of whom went through the same training and instruction as Plaintiff. Both testified that unlicensed SAs *could* make changes to loan structures. SMF ¶ 10. In fact, they testified that the only distinction between licensed and unlicensed SAs was the ability to communicate certain loan changes to clients. *Id.;* Ex. 7 at 24:22–25:5. Similarly, both SAs testified that it is appropriate to pass costs onto a client under certain circumstances. *Id.* at 23:1-19, 25:12-21; Ex. 6 at 28:7-19.

Further, Plaintiff was repeatedly told by his team leaders that unlicensed SAs could make changes to loans but only licensed SAs could communicate certain of those changes to the client. SMF ¶ 10. Courts have found that "[a] company's

explanations given to the employee for the challenged practices are also relevant to the objective reasonableness of an employee's belief…" *Day*, 555 F.3d at 58. In *Day v. Staples*, the First Circuit held that a plaintiff's complaint "initially reflected a reasonable concern" that "ceased to be reasonable after [defendant's] employees reiterated the rationales for the [] process, and assured Plaintiff that no fraud was being committed." *Id.*

Plaintiff admits that he received instruction on what he was and was not permitted to do on a loan as an unlicensed SA. Ex. 1 at 75:23–76:2. When questioned why he thought Rocket Mortgage's practice of permitting unlicensed SAs to make changes to loans was unlawful, he testified that it was "because of the training that [Rocket Mortgage] provided stating that we cannot talk rates, we cannot talk pricing… unless you are specifically licensed." *Id.* By his own admission, Plaintiff was aware that the only task unlicensed SAs were not permitted to do was *communicate* certain loan changes to the client. *Id*.

Finally, Plaintiff cannot point to a single provision in the CFPA that he believes Rocket Mortgage violated, nor does he believe that he received any training or other information that would lead to a reasonable belief that this was the case.[8]

---

[8] Plaintiff vaguely references the entirety of the Truth in Lending Act ("TILA"), 15 U.S.C. 1601, and its implementing regulation, Regulation Z, 12 C.F.R. 1026, but admits that he cannot point to any provision in the law that he believes Rocket Mortgage actually violated. With respect to training, Plaintiff's testimony has been remarkably inconsistent. Plaintiff's deposition occurred over two days because of

Ex. 19 at 8 ("Plaintiff does not know the specific subpart citations for any potential violations"); *see generally* Complaint. In *Veard*, the district court held that a terminated employee did not "satisfy the objective component" where the employee failed to bring any "element of the CFPA to the attention of the court that *required* [defendant] to [conduct business the way plaintiff assumed it should]." 2016 WL 645309, at *8 (emphasis in the original). Similarly, in *Sherman v. CBRE Grp., Inc.*, the court found plaintiff failed to establish that she had engaged in any protected activity where she failed to "articulate[] anywhere in the record how it is that the business practices she alleges she complained about were illegal nor how it would have been reasonable for her, as a finance manager, to have believed these activities were illegal." *Sherman v. CBRE Grp., Inc.*, 2016 WL 454733, at *5 (M.D. Tenn. Feb. 5, 2016).

Even if Plaintiff did subjectively believe that Rocket Mortgage's conduct was improper, that belief appears to have been conjured from nothing more than

---

his availability. On the first day, Plaintiff testified unequivocally that he never received any training that would lead him to believe that unlicensed team members cannot make certain changes to loans or that addressed passing costs onto clients. Ex. 1 at 76:13-16, 88:7-13. On the second day, Plaintiff changed his testimony and alleged that there was an annual training at Rocket Mortgage that "might" have covered unlicensed team members making changes to loans. Ex. 4 at 77:9–79:21. Rocket Mortgage has since transcribed the annual compliance training videos that Plaintiff took, and the trainings do not, in any respect, state that unlicensed team members are prohibited from making certain changes to loans. Ex. 20 ¶ 6. Plaintiff has the burden of establishing his belief was objectively reasonable, but he has failed to point to any law, regulation, training, or other basis for his purported belief.

Plaintiff's personal feelings. [9] This does not satisfy the "objectively reasonable" test.

*See Wiest v. Lynch*, 710 F.3d 121, 136 (3d Cir. 2013) (upholding dismissal where plaintiff could not establish that a reasonable person in plaintiff's position would have believed the contested conduct constituted a violation of law even if the facts establish plaintiff subjectively believed so).

### B.    Rocket Mortgage did not interpret Plaintiff's questions as protected activity.

None of Plaintiff's leaders—Keith Seay, Lakeia Gordon, or Beth Fishman— recall Plaintiff raising any concerns regarding Rocket Mortgage's lending practices and none interpreted any of Plaintiff's questions as a claim that Rocket Mortgage was violating the law. Because the leaders did not interpret Plaintiff's questions as an allegation that Rocket Mortgage was violating the law, they could not have factored this into their decision to terminate Plaintiff. *See Real-Loomis v. Bryn Mawr Tr. Co.*, 2022 WL 17477552, at *3 (E.D. Pa. Dec. 6, 2022) (finding Plaintiff failed to establish causation where the discharge decision-makers "didn't know about those

---

[9] Rocket Mortgage is "entitled to make its own underwriting decisions" and Plaintiff "has not explained how it was illegal for" Rocket Mortgage to permit unlicensed team members to make changes on loans. *See Veard,* 2016 WL 645309, at *8. Plaintiff's disagreement with his team leaders over Rocket Mortgage's policy "does not make their decisionmaking illegal and does not alone transform the subjective unprotected activity of his particularly emphatic dissatisfaction into an objectively reasonable protected one." *See Veard,* 2016 WL 645309, at *8; *Sherman*, 2016 WL 454733, at *5 ("At most, [plaintiff's] complaints could be construed as disagreements").

complaints" therefore, they 'couldn't have factored them into [their] decision to terminate [plaintiff].'"); *Beacom v. Oracle Am., Inc.*, 2015 WL 2339558, at *5 (D. Minn. Mar. 11, 2015) (communications with supervisors were not sufficient to put company on notice Plaintiff believed it was violating securities laws).

In *Sherman*, the district court found the defendant did not have constructive knowledge where "[plaintiff] never once indicated in her complaints that she had a belief—reasonable or otherwise—that the practices she complained about were illegal. 2016 WL 454733, at *5. Here, Rocket Mortgage could not have been put on notice that Plaintiff was engaging in protected activity based on his only asking of "questions." "Obviously, without knowledge of a plaintiff's whistleblowing or intention to whistleblow, there can be no retaliation for whistleblowing activity." *Pannell v. Future Now*, 895 F. Supp. 196, 200 (W.D. Tenn. 1995).

### C. Plaintiff has no evidence that the alleged protected activity was a contributing factor in his termination.

Plaintiff cannot establish a causal connection between his alleged protected activity and his separation from Rocket Mortgage. *Sussberg*, 463 F.Supp.2d 704. It is undisputed that Plaintiff had a very long history of disciplinary actions that began as early as 2019—years before Plaintiff raised his alleged complaints.[10] SMF ¶ 11.

---

[10] When confronted with his disciplinary record in his deposition, Plaintiff alleged that his colleagues raised complaints about him because he was not "politically correct," and that he—a white male—was being targeted by minorities because of his race. Ex. 1 at 155:4–157:6. Plaintiff's unwarranted hypothesis has no relevance

Team Leaders coached and warned Plaintiff repeatedly to, among other things, stop "leaving argumentative notes in AMP," to improve his "communication and tone" towards his fellow team members, and that his communication came off as "combative." *Id*. In fact, between October 2021 and May 2022, Plaintiff was informed no less than four times that if his unprofessional behavior and communication did not change that it may "lead to further disciplinary action including and up to separation." *Id.* ¶ 12.

After repeated warnings and coachings, his behavior did not change—rather, it escalated. Indeed, in June 2022, Plaintiff finally went too far. He had an interaction with underwriting team leader, Jorge Menocal, that was described as "aggressive" and "uncomfortable." SMF ¶ 18. When Plaintiff did not receive the desired response regarding a loan that was halted in the underwriting process, Plaintiff went to Mr. Menocal's desk uninvited, "hovered directly over [him]," "tried to pressure [Mr. Menocal]" into improperly proceeding with a loan, and, at one point, tried to take control by forcefully grabbing Mr. Menocal's computer mouse. SMF ¶ 17. This conduct was especially concerning as Rocket Mortgage was still implementing COVID-19 social distancing protocols and Plaintiff had inappropriately invaded Mr.

---

to the allegations in the Complaint. Not only is there no evidence in the record that Plaintiff was targeted by colleagues because of his race, gender or political beliefs, there is also no evidence in the record that any of the leaders who made the decision to terminate Plaintiff were aware that Plaintiff felt this way (because Plaintiff never raised any such concerns until his deposition).

Menocal's personal space. Ex. 15 ¶ 3. Mr. Menocal immediately reported this incident to Mr. Seay and Ms. Gordon, stating he believed Plaintiff's behavior "warrant[ed] further disciplinary action." SMF ¶ 18. As a result of this incident, and Plaintiff's extensive disciplinary record, Plaintiff's leaders made the decision to terminate his employment. SMF ¶ 21.

In *Sussberg v. K-Mart Holding Corp.*, this Court held there was no "causal connection" between plaintiff's alleged protected activities and his termination. 463 F. Supp. 2d at 712. In *Sussberg*, this Court found that there was no evidence that any of plaintiff's supervisors had a retaliatory motive for submitting negative reviews, and there were multiple intervening events that contributed to the termination decision, including "[plaintiff's] argumentative and disrespectful treatment of [his supervisors]," "his inability to get along with coworkers, and [a supervisor's] opinion that [plaintiff] was not performing well" at his role." *Id.* at 713-15.

Like the plaintiff in *Sussberg*, there were multiple intervening events that contributed to Plaintiff's termination decision. Plaintiff had been repeatedly disciplined throughout his tenure with Rocket Mortgage for his behavior. Many of these disciplinary actions took place well before Plaintiff ever asked questions regarding Rocket Mortgage's lending practices.

Importantly, Jorge Menocal knew absolutely nothing about Plaintiff's questions relating to lending practices. Ex. 1 at 219:16-25. Plaintiff was terminated

after Mr. Menocal brought the June 2022 incident to the attention of Plaintiff's team leaders, but Mr. Menocal could not possibly have acted with any retaliatory motive given that he had no knowledge of Plaintiff's alleged protected activity.

## II.  Rocket Mortgage Has Clear and Convincing Evidence that It Would Have Taken the Same Action Absent Any Alleged Protected Activity.

As explained above, Plaintiff bears the burden to establish each element of a *prima facie* case for retaliation but cannot establish a single one them, let alone all of them. Even if he could establish each element of a *prima facie* case, Plaintiff's CFPA claim still fails because Rocket Mortgage has "clear and convincing evidence" that it would have terminated Plaintiff's employment in the absence of his alleged complaints. *Veard,* 2016 WL 654309, at *9; *Walton v. Nova Information Systems*, 2008 WL 1751525, at *7 (E.D. Tenn. April 11, 2008) (noting that, once the employer satisfies its clear and convincing evidence burden, the claim fails and the inquiry ends, unlike the *McDonnell Douglas* burden-shifting framework).

As discussed above, Plaintiff had a long history of unprofessional behavior and poor communication issues with both his coworkers and his team leaders starting in 2019. SMF ¶ 11. Plaintiff was informed numerous times that if his conduct continued it would "lead to further disciplinary action, up to and including separation." *Id.* ¶ 12. After repeated warnings and coachings about his behavior and communication, the combative June 2022 incident with Mr. Menocal was the last straw and Rocket Mortgage finally made the decision to separate him. *Id.* ¶ 21.

23

In *Wallender v. Canadian National Railway Co.*, despite "frequent warn[ings]" including a warning that "stated that further instances of misconduct could result in termination," plaintiff regularly entered incorrect departure and arrival times of trains. 2015 WL 10818741, at *23 (W.D. Tenn. Feb. 10, 2015). The court found that defendants presented "particularized facts" that the decision to terminate plaintiff was made "only after he consistently engaged in misreporting train metrics and had been repeatedly warned about such practice." *Id.* Similarly, in *Veard*, the court found that the defendant had offered clear and convincing evidence that it would have terminated plaintiff's employment in the absence of any protected activity where the defendant presented evidence of "[plaintiff's] insubordination" and the "[defendant's] reliance on [plaintiff's] insubordination in making the decision to terminate [plaintiff]." *Veard,* 2016 WL 645309, at *9.

In the present case, it is clear that Plaintiff "received sufficient warnings" regarding his conduct and "knew [that conduct] would be unacceptable" if repeated. *See Wallender,* 2015 WL 10818741, at *23. Rocket Mortgage had ample justification for its termination decision and Plaintiff's failure to improve his behavior was thoroughly documented. "[I]t's not the Court's job to second guess [Defendant's] policies because the Court is not 'a super-personnel department that reexamines an entity's business decisions… Rather, [its] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Real-Loomis,*

24

2022 WL 17477552, at *4 (granting summary judgment where financial institution successfully established "that it would have made the same decision to terminate [plaintiff] regardless of any protected activity"). Rocket Mortgage has provided clear and convincing evidence that it had legitimate, non-retaliatory reasons for terminating Plaintiff's employment. For this reason alone, the Court should grant summary judgment in its favor.

## CONCLUSION

For the reasons stated above, Rocket Mortgage respectfully requests that this Court grant its Motion for Summary Judgment.

Dated November 4, 2024              Respectfully submitted,

                                   */s/ Christina Lewis*

James F. Hermon (P53765) Dykema      W. Kyle Tayman
Gossett PLLC 400 Renaissance Center  Goodwin Procter LLP
Detroit, Michigan 48243 Telephone:   1900 N Street, N.W.
(313) 568-6800                       Washington, DC 20036
JHermon@dykema.com                   Telephone: (202) 346-4000
                                     ktayman@goodwinlaw.com

                                     Christina Lewis
                                     Goodwin Procter LLP
                                     100 Northern Avenue
                                     Boston, MA 02210
                                     Telephone: (617) 570-1000
                                     ChristinaLewis@goodwinlaw.com

*Counsel for Defendant Rocket Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2024, the foregoing was electronically filed with the Clerk of the Court using the ECF system, which served notice of the filing upon all attorneys of record.

Respectfully submitted,

*/s/ Christina Lewis*
Christina Lewis
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
ChristinaLewis@goodwinlaw.com

*Counsel for Defendant Rocket Mortgage, LLC*